Good morning, Honorable Justices of the Ninth Circuit Court of Appeals. My name is Howard Sagaser and I represent the appellant, Robert Vander Eyk Dairy. And taking the lead from the opening comments, are there questions you wish me to address before I make my comments? Well, you can start and then we'll jump right to what, you know, obviously what's important. But in terms of, obviously, some of the questions that, you know, I can direct you in terms of some of the questions that I have is, obviously, your client didn't request the arbitration within the 60 days, correct? We did, and then when we found out the onerous conditions. Well, you didn't, okay, you didn't initiate it, all right, you didn't initiate it. We didn't complete the initiation after we found out the conditions. So, if, you know, what evidence is there in the record that your client signed a CBA? I don't think there is. There's one. Well, the 2005 is something. Right, the 2005 is a signed collective bargaining agreement. Now, as to. And he doesn't deny the signature. He doesn't deny the signature, but the question then becomes, is that a void document ab initio, which we say it is under the California law, which governs whether this is a valid contract or not. And under the published Joseph Freitas and Sons case, that contract was void because there was never an election of the employees. And in our briefs, we made it pretty clear that there's a real distinction between this area where Congress did not cover agriculture employees under the National Labor Relations Act and the California statutory scheme. And you can only recognize a union under the California scheme if it has been certified through a secret ballot election. You don't have all these other voluntary records. Well, it seems to me the best argument that you have is one that you didn't necessarily make, all right? And what I am looking at is, in order to be subject to the arbitration clause, it would seem that you have to be an employer that signed a CBA. And you, the dairy admits that it's an employer under 28 U.S.C. 10025. Doesn't that constitute an admission that required your client to collect a bargaining agreement? No, because I think that that's admitting that you're an employer, but it's not necessarily admitting that you have signed a valid collective bargaining agreement. But if you, if you're an employer pursuant to that, is that an employer that signed in a collective, does it say that that would be an employer that would have signed a collective bargaining unit? It's, but there's a distinction between signing a collective bargaining agreement versus signing a collective bargaining agreement that's void from its very beginning. And so I think that that's an important distinction, is that the employer never admitted that it had signed a valid collective bargaining agreement. It only admitted it signed a collective bargaining agreement. Shouldn't he just have not admitted he was an employer? Well, again, I think. I mean, I know he has people working for him and all of that, but if you admit that you're an employer in, as a term of art, isn't that include all of those? No, I don't think it's admission as to that specific allegation. Now, if there had been a specific allegation that they had signed a valid collective agreement that wasn't void, then I would agree with your Honor. But I think that here, they're trying, the employer's trying to. But just a minute, Counselor. I think she's making a very distinct point, which I'm listening very carefully to what you're saying, because I want to see whether I have to do. But the failure to arbitrate, like the failure to exhaust administrative remedies, ordinarily bars an employer from contesting withdrawal liability. There are exceptions to the failure to arbitrate. One of those exceptions is that you're not an employer. We don't talk about an employer who signed this or who didn't sign that. It's an employer under 29 U.S.C. 1002.5. And then you say, I mean, my worry is that you admit in the statement of genuine disputes of material fact that you are an employer within the meaning of 1002.5. So that takes away one of the exceptions that you'd have to get out of arbitrating. I tried to find you under the other exceptions and I couldn't get there. I think, again, I think it was our interpretation that when we admitted that we're only admitting that we're an employer that signed a collective bar agreement, but we agreed that the agreement was valid, because later on, we just... Well, did you read 1002.5? Because you didn't just... Your statement is that you're an employer within the meaning of that section. That's correct. But we're not an employer that signed an underlying agreement that is not void. Well, I guess I don't find anything in the exceptions to the failure to arbitrate which go to the length you're saying that signed a particular agreement. It's just employer within the meaning of that. If you argue that, you don't have to arbitrate. You don't have to exhaust your remedy, which we are always talking about exhaustions of remedies. And that's why I wanted to concentrate you on there, because, frankly, it seems to me nobody can tell me that you were supposed to pay what you paid over the long period of time. It's not in this record. I'd be happy to try to see somebody try to find that out someplace, but I can't find you an exception. Well, Your Honor, all I can do is... What I've said here is that when we answered that, we were saying, yes, we're an employer that signed a valid collective bargaining agreement. We went on in the disputed facts to point out that the agreement, though, that we signed was void. So I think that, you know, to the court, I think it was very clear what we were saying in that response. So I think that the real... So, wait, were you talking about, though, when that admission, even though we're trying, we're getting in the head, that you were talking about that you'd signed the 2005? Correct. Okay, so what evidence in the record is there of the CBA prior to 2005? It's very sparse, because we have this allegation, Lester Smith, who may have owned multiple dairies, I don't know, sold them a dairy. And that... Well, do we have a CBA signed by Lester Smith? No. Has the union produced anything? No. And then we have that this partnership, R.C. Dairy, which was that of Robert Vander Eick, appointing this producers' bargaining committee. And we don't have anything in the record as to what they are, and I, you know, what their powers were or anything else. What we do have, then, is that partnership that signed that agreement with the producers' bargaining committee ceased to exist a couple of months later when Robert Vander Eick bought out his father. And under California law, the partnership would cease to exist at that point in time, because you only have one person, and that was Robert Vander Eick Dairy. And when you bought the dairy, did you buy it, you didn't take on any of his debts? That's correct. It was an asset purchase. But then you did just pay these people that you paid the union bills that you got. Is it a violation of anything to have union and non-union people working in a dairy? If you have a proper certification, it covers all the agricultural employees. So, which shows me that the union didn't think they had a valid collective bargaining agreement, because they were only collecting for the people who are union members. And here you have a bargaining unit, which statutorily is defined under California law as all the pension for the union members and not the non-union members. So, if the union felt they had a valid collective bargaining agreement, by California statute, it would cover all the employees. And I think that shows a real dispute of the facts here. And then you have from 1984 to 2005, no agreement being signed at all by Robert Vander Eick Dairy. And then you have... When the agreement was signed in 2005, the fact that it was signed by your client indicates this or not, that it thought it was an employer at that time? He signed it when his operation was in Southern California. Shortly before he moved up to the central San Joaquin Valley, 200 miles away. And as we've cited the Sun World case, the union had been inactive from at least from 84 to 2005 at this dairy. Nothing had been signed. They were only collecting from a small number of the employees. And that inactive certification would not apply to that dairy 200 miles away. I've only got four minutes left. May I change? One other question I'd like to ask you before you quit. If you cannot escape your statutory duty to arbitrate by what you're suggesting by the TVA agreement, is there any other equitable tolling I can use to eliminate that? Because I find no case to suggest that just because you think the arbitration clause is unconscionable that it gets you out. I can't find any argument you've made that gets you out. So if I can't live with the TVA, are you stuck? I think the issue of unconscionability is for the court to decide, not the arbitrator. Well, now, just a minute. You've got to get out of a reason to not arbitrate. And the reason is that the statute says it has to be fair and equitable. The Pension Benefit Guarantee Corporation set forth the arbitration rules with an agreement that was never presented to my client. They have tried to alter those rules so that now that if you go to arbitration and lose, you have to pay attorney's fees, which is contrary to the statute, contrary to the rules. Is there any case which says that simply because you think the arbitration agreement is unconscionable, it gives you a reason, equitably, not to do it? I believe so, because I... What case? I tried to find it in your brief, and I couldn't, and I can't find it otherwise. I think when an entity is not following the statute and is imposing... Okay, that's not answering the question. Do you have a case? I do not have a case. It's a case of first impression. All right, so save the balance for your rebuttal. Thank you. Thank you. Good morning. Good morning, Your Honors. Donna Kirchner on behalf of the Dairy Employees Union Local 17, Christian Labor Association of the United States of America Pension Trust and its Board of Trustees. And on that point, I would just note that I do not represent the union. I only represent the pension trust. They are two separate legal entities. All right. Let me just jump right in with you. Okay. I mean, I think we all on this panel understand the importance of maintaining retirement systems and why there are withdrawals, because otherwise, if people don't pay the withdrawals, then the plan implodes on itself, and people are hurt. And so that's really important. I'm troubled in this situation that it's, that there isn't a CBA that we have in the record up until 2005. They're arguing about that, but that's something that's signed. So, and they pay it, and all during that period of time, if it's wrong to have, you know, the union never comes around. They just sort of take the money as a windfall. I don't know whether they think that they have any right, you know, if they were concerned, they, it should apply, my understanding is, to, they shouldn't have non-union and union people in there. There's nothing that's going on to that effect. And then they do go, you know, when they see this, they say, well, we want to do something about it. And then, but they don't initiate the arbitration within the 60 days. I think that there's a triable issue as to whether there, he's an employer from 1984 to 2005, but I don't find in the record that that's what he raised when he admitted that. But factually, there certainly seems to be that issue. Until the reply brief, they did not raise the issue of, claim that they were not an ERISA that have the word employer. The MPPAA does not have a definition for the word employer. The first part of ERISA does. Some courts have borrowed that. Some courts have borrowed that with a twist. But the MPPAA itself has no definition and is a general matter of statutory construction. An undefined term is given its normal construction. There's no dispute that Robert Vandereich Derry is an employer because it employs employees. Right. And that's pretty, yeah. And I can see why someone would think. But what did he admit? So the admission does seem to be for the definition in Part 1. So the question is And what does that mean? Does that mean an employer that has signed a CBA? It's actually no. It does not say an employer who has signed a CBA. It says an employer or somebody acting on behalf of, I don't recall the exact words, but somebody who's acting as an employer with regard to the employees. To cover people other than the common law definition of an employer. To bring in a broader category. There is case law that says that definition was intended to broaden, not narrow, the definition. They've cited no case where a court has narrowed the definition to mean an employer only at this subset of employers who have an obligation to contribute. The obligation to contribute language in the definition in Part 1 is to bring in people who have an obligation to contribute who do not meet the common law definition of employer. Well, if he didn't sign, if there is no CBA, let's just, does he have an obligation to contribute? Let's assume that 2005 he signed a CBA. Is there a difference? Yes, because the obligation to arbitrate is what he would have. An employer who disputes an assessment of withdrawal liability, the tribunal for resolving that dispute is arbitration. Section 29 U.S.C. 1401B1 states, and I'll quote, if, well, before the quote, if the employer against whom a pension plan assesses withdrawal liability does not timely initiate arbitration, then the Section 1401B1 states, the amounts demanded by the plan sponsor under Section 1399B1 of this title shall be due in owing. So at the point that the time to initiate arbitration expires, by operation of statute, the liability is imposed. Right. Contract offenses at that point do not apply. Well, maybe I'm not following all this. If we were to read the admission in the summary judgment as his saying, I am an employer because I signed the agreement in 2005, but we were to read the rest of what he asserts as saying, but I wasn't an employer before 2005, then the provision you're referring to doesn't click in before 2005, does it? With all due regard, there's nothing in the statute that puts any sort of time limits of for this period of time you're an employer and for this you're not. If you are an employer at any point in time, and actually there is case law out there, the cases that say you get out of arbitration if you want to dispute you are an employer, have been narrowed to apply only to the dispute as to whether you were ever an employer. And if the dispute is over when you were an employer, have you ceased being an employer, and I would submit when did you begin being an employer, that goes to arbitration. And if you don't arbitrate, you have waived that argument. And in this case, there's no dispute that at least at some point in time, in 2005, Banderai Derry was an employer. It seems to me, though, if he had asserted, when you look to the language what the exceptions are, that if you're not an employer, it seems to me if he had asserted that flat out in the beginning saying I am not an employer, that the district court that could have, you know, might not, you know, then determined, you would argue, you'd say if you're ever an employer, you're always an employer and all of that. He would argue I wasn't until 2005 or I never was because of all these other things. The district court would then make a determination. And if the district court determined that he was always an employer, might not toll the statutory or might say, okay, to make this determination, I'm tolling the period. Now the 60 days start. But he didn't make, he didn't claim the reason I'm asking for tolling is I'm not an employer. Yeah, there's two different things. He claimed tolling because they had objections to the arbitration provision, which they never mentioned to the pension fund before the time to arbitrate expired. If they had mentioned that they wanted to try other procedures, we could have done that. That's what happened in the Irrigary case that's cited in their brief and also in ours. When they cited Irrigary for some of these issues they raised, the summary judgment was still pending in that case. The judge in that case has since ruled in favor of the pension fund. And I do have a cite to that case if you would like it. Let me ask you one little further question. It seems to me that if he'd said, I'm not an employer, at that point, there would be a genuine issue of fact about whether he's an employer and the time deadline for determining to arbitrate would have been tolled. Wouldn't you agree? I believe that he would have had to ask for tolling either from a court or an agreement by the pension fund, or maybe initiate the arbitration and ask for it to be stayed, none of which was done. And this is a very important point. Well, I think it's important because I think that there's a lot of other dairies out there that have the same thing going on. Well, there's that, but there's another point I'd like to raise. If before the time to arbitrate had expired, they had inquired about using different procedures, we could have, the pension fund board of trustees would have made a decision whether or not it's in the best interest of the beneficiaries and participants to do so. If you've got an employer there threatening to litigate, that might be a prudent thing is to say, okay, we're going to agree to toll the time to initiate arbitration while we sort this out. And in fact, that happened in the Irrigary case. But once the time to arbitrate has expired and the statute mandates that the amount demanded that has become due and owing, at that point, the board of trustees as a risk of fiduciaries have an obligation to collect that amount that is now due and owing. But if in fact, the idea of whether they were an employer or not is genuinely disputed, then at that point, you would go to the district court and determine whether an employer and if they were determined not an employer, they wouldn't have had to arbitrate. Correct. But you go to the district court, which is what they did in Irrigary with a declaratory relief cause of action saying, we're not employers. And arbitration has been on hold. We're now just getting to it because the district court said, you're employers. Go arbitrate. But they weren't tasked that they blew the time. They hadn't blown the time. Yeah, because they went first and they, within the time period, they asked a district court to determine whether they were an employer. Well, first, Mr. Sackes's firm contacted us and said, you know, will you agree to stay the amount of time to arbitrate? And we said, yes, we can do that because we don't want to spend legal fees if this is an issue that needs to be sorted out. It's the pension fund has the. So if he's, but he didn't go to court till you, the time, the time expired. And then no, the time never expired. We stayed it for one or two months. And then we said, okay, that's all we're going to stay at. So they initiated the arbitration and went to court and we agreed to stay the arbitration while the court proceeding. That's in the former case. In Irrigary. But I'm talking in this case. Okay. So yeah, that's, yeah, that's what you're saying. Irrigary, they did it right. You're saying here he did it wrong. But then when you said they did all of that and I'm thinking like, no, I thought I just said they didn't do all of that. Okay. Say you're talking about Irrigary. You're not talking about the facts. I'm sorry I confused you. Irrigary site is 2015 WL for Westlaw 9 3 1 9 4 4 8. Now you might tell Judge Callahan what are the facts here? The facts here are that, well, I think I know what they are here, but I just, when you were saying the other one, I thought, well, that doesn't sound right. Right. We offered, we offered to stay the litigation. We would have, you know, we didn't know they were objecting to any of the provisions. They had not properly initiated arbitration. So my colleague wrote to them and said, under the plan documents, here's what's required. And if you'll ask, you know, if your client will start making their interim payments, then we'll stay this process. So if, my understanding is, if like in, if like in Irrigary, they had at that point within the period that you stated, initiated a declaratory relief or something and saying, we're not an employer, district court determined whether we're an employer. And you would, that would have been the right thing to do. And if they had said they weren't an employer, then he wouldn't have been subject to arbitration. If they, if the court says you are an employer, the time's told, and then you go to arbitration. The time is told if somebody has said the time is told. If a court has said it or if there's an agreement. If a court does or you agree, yes. And here you agreed for a limited period of time, or you offered. We offered to stay the court action, but we didn't know they had any objection to the arbitration procedures. What we got in response was an October 3rd, 2012 letter that said that the Dairy was electing not to arbitrate. It didn't tell the pension fund anything about any objections, what they would rather do, what, you know, they just simply said they were electing not to arbitrate. And then the time after that, the time to arbitrate expired. At that point in time, our position is that the fiduciary obligation of the trustees is to go collect the amount that by statute has become due and owing. And there's no case that they cite that any of their defenses apply to that statutory provision. Just, let me just ask you this question. It's not, if this didn't happen, so I'm not. But if, let's say, they had done a right and the court said you weren't an employer until 2005, would their withdrawal liability be different? That would be a subject, perhaps, for arbitration. Again, the statute But just, even though we don't, you don't have to say what the amount would be, but if you weren't an employer for that period of time, it sort of follows that it would be your withdrawal liability would be less, or is that wrong? I disagree, Your Honor. Well, I'm just asking you in your expertise. Yes, I disagree because there are very I mean, you disagree with reasons. Okay, that's it. Don't just disagree, disagree with reasons. I'm asking for your expertise here. The statute, the MPPAA has very specific calculations for how you calculate withdrawal liability, and it's based on contribution history. There's nothing in those calculations about whether the CBA was valid or not during that period. As this circuit has recognized, and Your Honor, Judge Callahan was on the panel for the Moxley case, withdrawal liability is a separate obligation and contributions with separate policy considerations. It's designed to meet the needs of the pension fund going forward so that it can pay the benefits that have been promised to these employees based on the contributions through all those years, regardless of whether the CBA was valid or not. I have one moment, and I would like to just encourage you to carefully read the McKillop case based on the Berry cases that are discussed at page 42 of our brief that the CBA, if it's void, even if it's absolutely void, the pension of obligations still must be enforced. So all that discussion about it being a void CBA just doesn't apply to the withdrawal liability obligation. Okay. Thank you. Thank you, Your Honors. If I could, I'd like to cite a case that I found yesterday which is one Ms. Kirchner was involved in. It's the resilient floor covering pension trust case. It's at 801 F3rd 1079, and we argued below that we didn't assume any of the debts, we didn't know any of them, and under the successorship analysis that this Court had, that's the crucial inquiry is did the employer know, did the employer agree to assume that obligation? But I want to point out procedurally here that what happened here was the pension fund filed the lawsuit in May well before the time period to even ask for the accounting or to contest it arose. The real reason you didn't initiate arbitration was you had a problem with how costly it was, and that was, and I think as Judge Smith has pointed out, that there's quite a significant amount of case law that says the unconscionability is something that can be arbitrated. It doesn't say it has to be arbitrated, and basically the case law is that unconscionability is for the courts to decide, not the arbitrator here. And I think there's another point here is you have to understand the employer received simultaneously the fact that they'd already been sued by the pension fund, and then they had this onerous arbitration cost to go forward. So the employer counter-sued and also raised all these affirmative defenses in the litigation brought by the fund before the time to arbitrate had expired. And had it not been for the unconscionable provisions, then perhaps- Well, but if you look at the failure to arbitrate, Judge Smith went through the three reasons that we can find an exception in tolling. You didn't present that to the district court, that you were not an employer. We did. We presented it in our affirmative defenses. We presented it in the disputed facts. We have all the- The undisputed facts. In the undisputed facts. And we disputed facts 4, 6, 7, 8, 9, 12, 15, and 16. We set forth evidentiary objections, 13 and 14, and the other ones that weren't ruled upon. And we were disputing that. The problem that I have with your argument, and I want you to think about this, if the courts say you've got to exhaust all of your administrative remedies in the appropriate agency before you can come to court, then the courts always say, if you don't exhaust, get out of here. In this particular matter, the courts say you have to arbitrate. You can't get out of it unless you meet one of the three. Otherwise, you can't go to court. Tell me which one of the three you're going to meet. Your Honor, I don't think there's a case out there, and I'm submitting there's a number four that the courts have to address. And that's when the arbitration that's being offered violates the very statute that mandates that you arbitrate. It imposes unconscionable terms that have not been agreed to by the parties, and that's contrary to regulations and statute. I think that is an exception that the court should apply here. I think also- I thank you, then, for your answer. Can I make one other quick comment? Sure. Make it quickly, because you're already in overtime, and we don't have any questions. If you read undisputed fact number three, it simply states, Defendant Robert Vandereit, whether Derry is an employer in an industry affecting commerce within the meaning of section, and it cites the various cases. And I think it's clear that by doing that, you're not admitting that you signed a collective bargaining agreement. The statute doesn't have that, and it's ambiguous. And to make that factual determination that we've waived all those arguments based on that as phrased, and it doesn't even state when we were the employer. We just admitted that we were without- All right, I think we have your argument well in mind. Thank you both for your arguments. This will stand submitted. Thank you very much. Thank you both.
judges: Callahan, N.R. Smith, Rakoff